**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000541
02-AUG-2019
08:35 AM**

NO. CAAP-16-0000541

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
WILLIAM BARNES, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(CASE NO. 1DCW-13-0004900)

SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Reifurth and Hiraoka, JJ.)

Defendant-Appellant William Barnes appeals from the
June 30, 2016 Notices of Entry of Judgment and/or Order entered
by the District Court of the First Circuit ("District Court").[1]
Barnes was charged with one count of Harassment in violation of
Hawaii Revised Statutes ("HRS") sections 711-1106(1)(a) and/or
(1)(b),[2] and one count of Theft in the Fourth Degree ("Theft 4")

---

[1]    The Honorable James Ashford presided.

[2]    The statute provides, in pertinent part, that

　　　　(1) A person commits the offense of harassment if,
with intent to harass, annoy, or alarm any other person,
that person:

　　　　　　(a)    Strikes, shoves, kicks, or otherwise touches
　　　　　　　　　　another person in an offensive manner or
　　　　　　　　　　subjects the other person to offensive physical
　　　　　　　　　　contact; [or]

　　　　　　(b)    Insults, taunts, or challenges another person in
　　　　　　　　　　a manner likely to provoke an immediate violent
　　　　　　　　　　response or that would cause the other person to
　　　　　　　　　　reasonably believe that the actor intends to
　　　　　　　　　　cause bodily injury to the recipient or another
　　　　　　　　　　　　　　　　　　　　　　　　　　　(continued...)

in violation of HRS sections 708-833(1)[3/] and 708-833.5[4/].  After a bench trial, Barnes was found guilty and sentenced to concurrent terms of jail: two days on the Harassment charge, and three days on the Theft 4 charge.

_____

[2/] (...continued)

> or damage to the property of the recipient or another[.]

Haw. Rev. Stat. § 711-1106(1)(a)-(b) (Supp. 2012).

[3/]    The statute provides, in pertinent part, that "[a] person commits the offense of theft in the fourth degree if the person commits theft of property or services of any value not in excess of $100."  Haw. Rev. Stat. § 708-833(1) (1993).

HRS section 708-830 defines theft as including Shoplifting as follows:

> A person commits theft if the person does any of the following:
>
> . . . .
>
> (8)    Shoplifting.
>
>> (a)    A person conceals or takes possession of the goods or merchandise of any store or retail establishment, with intent to defraud.
>>
>> (b)    A person alters the price tag or other price marking on goods or merchandise of any store or retail establishment, with intent to defraud.
>>
>> (c)    A person transfers the goods or merchandise of any store or retail establishment from one container to another, with intent to defraud.
>
>> The unaltered price or name tag or other marking on goods or merchandise, duly identified photographs or photocopies thereof, or printed register receipts shall be prima facie evidence of value and ownership of such goods or merchandise. Photographs of the goods or merchandise involved, duly identified in writing by the arresting police officer as accurately representing such goods or merchandise, shall be deemed competent evidence of the goods or merchandise involved and shall be admissible in any proceedings, hearings, and trials for shoplifting to the same extent as the goods or merchandise themselves.

Haw. Rev. Stat. § 708-830(8) (Supp. 2012).

[4/]    The statute provides the sentencing guidelines for the offense of Shoplifting.  *See* Haw. Rev. Stat. § 708-833.5 (1993).

The charges stem from an incident that occurred on October 16, 2013, when Robert Rivera, an asset protection investigator for the Sports Authority formerly located on Ward Avenue, observed Barnes select two wrist watches from the front of the store, take them to the footwear department, take pliers out of a black bag that he had, use the pliers to cut the watches out of their casings, and conceal one in his waistband and one in the black bag. Rivera claimed that he did not see Barnes pay for the watches as he observed Barnes walk past the cash registers and through the exit. Upon exiting the store, Rivera confronted Barnes. According to Rivera, Barnes then got mad, came up close to Rivera's face, put his leg between Rivera's legs, and while making a "humping" motion, told Rivera, "You know you want me. You know you want me, Baby." Rivera stepped back and Barnes allegedly spit on him. Honolulu Police Department ("HPD") officers arrived shortly thereafter.

Barnes testified that he and his friend Brian Yoneda went to Sports Authority so that Barnes could buy Yoneda items using a Visa gift card. Barnes alleged that a Sports Authority employee cut one of the watches from its casing so that Barnes could try the watch on and show it to Yoneda, but that Barnes put everything back on the box and left it in "the sitting area [] where people could sit down and try on shoes" while he left the building to use the bathroom. Barnes contends that after he exited the store, Rivera stopped him and asked him to come back in the store regarding damaged packaging. Barnes told Rivera, "No. I'm Native Hawaiian. This is my country. I want to be free to leave[,]" and that Rivera blocked him and pushed back towards him "like . . . herding [him] backwards." Barnes said that he then started "playing to the crowd because I'm thinking I'm gonna walk into my boss's office, Myles Breiner, and I'm gonna tell him they just illegally detained me, accused me of shoplifting, and it's gonna be ka-ching." At some point, Barnes claimed that Rivera inadvertently touched Barnes with his crotch. Barnes testified as follows:

> So he keeps pushing me back. At that point he's touched me with his crotch, um, inadvertently. I use that as a point. I say, Excuse me. You just sexually assaulted

me. You are sexually assaulting me right now. You've touched me with your crotch. Are you gay? Are you a faggot? What is your issue? Why are you touching me with your crotch? I do not want you touching me with your crotch anymore.

Q [by defense counsel] And you're saying that really loud so everybody can hear you?

A Yes. I'm saying it extraordinarily loud.

. . . .

Q Okay.

A So, I'm trying to get points I guess or whatever in my head, you know, that this is just way over the line. They've crossed the line and it's not supposed to happen that way. So, as they're pushing me backwards and pushing me backwards now, now he gets very aggressive and very upset because I've just made an accusation towards his manhood I guess in public.

Barnes stated that Rivera was about twelve inches from his face, but denied spitting on him.

When HPD Officers arrived, Rivera told them what happened and that he had only recovered one watch from Barnes's black bag, at which point the officers told Rivera that they would only proceed with the harassment charge and not the theft charge. Rivera did not show the officers any spit on his face or preserve the spit for evidence as he had already wiped it off by the time HPD had arrived.

Of the two watches Rivera claimed to have seen Barnes take, only the one concealed in Barnes's bag was recovered. Rivera testified that when he retrieved Barnes's bag, it was on top of a shopping cart, but he was not sure how it got there, that he retrieved the watch from the pocket of Barnes's bag which he observed Barnes put the watch in, that the watch was the one for which the empty casing that Rivera recovered in the footwear aisle was for, and that after recovering the watch, Rivera put the watch back in the casing and back out for sale. The parties would later stipulate that HPD "did not recover any Sports Authority property from [] Barnes' person or black bag or clothing[.]"

On appeal, Barnes asserts that the District Court erred (1) in failing to dismiss the Theft 4 charge where the charge failed to identify the specific items that Barnes allegedly

concealed or took possession of; (2) in denying Barnes's April 24, 2015 Motion to Dismiss for Destruction of Evidence ("Motion to Dismiss"); (3) in denying Barnes's oral motion to suppress evidence ("Motion to Suppress") based on the warrantless search of his bag; (4) because there was no substantial evidence to support the Theft 4 conviction; and (5) because there was no substantial evidence to support the Harassment conviction.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we affirm.

(1) In his first point of error, Barnes argues that the District Court erred in failing to dismiss the Theft 4 charge because the omission of the specific items he allegedly concealed or took possession of violated his right to due process. Relying on *State v. Wheeler*, 121 Hawaiʻi 383, 219 P.3d 1170 (2009), Barnes argued for dismissal based on insufficiency of the charge after the State rested its case, and the District Court did not expressly rule on the request. Specifically, Barnes contended that the complaint failed to specify whether he was being charged with concealing or possessing the watch that Rivera recovered from his bag or the watch that Rivera allegedly saw him take and conceal, but was never recovered, or both, and therefore he was not sufficiently apprised of the basis for the Theft 4 charge.

"Whether an indictment or complaint sets forth all the essential elements of a charged offense is a question of law, which we review under the de novo, or right/wrong, standard." *State v. Merino*, 81 Hawaiʻi 198, 212, 915 P.2d 672, 686 (1996) (internal quotation marks, brackets, and ellipses omitted) (quoting *State v. Wells*, 78 Hawaiʻi 373, 379, 894 P.2d 70, 76 (1995)).

In holding that an oral Operating a Vehicle Under the Influence of an Intoxicant charge was insufficient because it failed to allege the element of "public way, street, road, or highway," as an attendant circumstance, the supreme court in *Wheeler* reaffirmed the principle that

> the sufficiency of the charging instrument is measured, *inter alia*, by "whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet[.]" "A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process."

*Id.* at 391, 219 P.3d at 1178 (footnote and internal citations omitted) (quoting *Merino*, 81 Hawaiʻi at 212, 915 p.2d at 686). Accordingly, for Barnes's Theft 4 charge to be sufficient, it would need to have contained the elements of the offense intended to be charged, and sufficiently apprise Barnes of what he must be prepared to meet.

The statute on Theft 4 says that "[a] person commits the offense of theft in the fourth degree if the person commits theft of property or services of any value not in excess of $100." Haw. Rev. Stat. § 708-833(1). "A person commits theft if the person does any of the following: . . . (8) Shoplifting. (a) A person conceals or takes possession of the goods or merchandise of any store or retail establishment, with intent to defraud." Haw. Rev. Stat. § 708-830(8)(a). "Intent to defraud" is statutorily defined as either "[a]n intent to use deception to injure another's interest which has value" or "[k]nowledge by the defendant that the defendant is facilitating an injury to another's interest which has value." Haw. Rev. Stat. § 708-800.

Here, the Theft 4 charge in the Complaint provides as follows:

> COUNT II: On or about the 16th day of October, 2013, in the City and County of Honolulu, State of Hawaii, WILLIAM BARNES, also known as William J. Barnes did conceal and/or take possession of goods and/or merchandise, the value of which did not exceed One Hundred Dollars ($100.00), the property of The Sports Authority, a store and/or retail establishment, with intent to defraud, thereby committing the offense of Theft in the Fourth Degree, in violation of Section 708-833(1) of the <u>Hawaii Revised Statutes</u> and he is subject to sentencing under Section 708-833.5 of the <u>Hawaii Revised Statutes</u>.

The language used in the charge tracks the language provided in the relevant statutes stated above. On this basis alone—that all the elements of Theft 4 as defined above are alleged in the Complaint—the Theft 4 charge is not defective. *See State v. Treat*, 67 Haw. 119, 120, 680 P.2d 250, 251 (1984)

6

(holding that a Theft in the First Degree charge was not defective when it tracked the statutory definition of the offense because the charge alleged all of the statutory elements of the offense); *see also Wheeler*, 121 Hawaiʻi at 393, 219 P.3d at 1180 ("In general, 'where the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient.'" (brackets omitted) (quoting *State v. Jendrusch*, 58 Haw. 279, 282, 567 P.2d 1242, 1245 (1977))).

In determining whether Barnes's right to be informed of the nature and cause of the charge against him was violated, we must look at the information supplied to him at the time he asserted the charge was defective. *See State v. Hitchcock*, 123 Hawaiʻi 369, 379, 235 P.3d 365, 375 (2010). Here, Barnes did not claim that the Theft 4 charge was insufficient until after the State had rested its case. By that time, Barnes was fully aware of Rivera's testimony and that the theft charge was based on the watch that was recovered from his bag outside of the store.

Therefore, the District Court did not abuse its discretion in failing to dismiss the Theft 4 charge because the complaint did not specify which items Barnes allegedly concealed or took possession of, and consequently did not violate Barnes's right to due process. *See State v. Akau*, 118 Hawaiʻi 44, 51, 185 P.3d 229, 236 (2008).

(2) In his second point of error, Barnes argues that the District Court erred in denying his Motion to Dismiss where the State failed to preserve potentially exculpatory evidence. Barnes contends that the District Court's denial of his Motion to Dismiss where the State's and HPD's failure to preserve and/or obtain the surveillance video from Sports Authority and Victoria Ward Center, regardless of whether the State or HPD acted in bad faith, amounted to a violation of his due process rights.

This court reviews a trial court's ruling on a motion to dismiss for an abuse of discretion. *See Akau*, 118 Hawaiʻi at 51, 185 P.3d at 236.

The destruction of evidence may "authorize[] dismissal
. . . , regardless of good or bad faith, where the evidence lost
or destroyed is 'so critical to the defense as to make a criminal
trial fundamentally unfair without it.'" *State v. Steger*, 114
Hawai'i 162, 170, 158 P.3d 280, 288 (App. 2006) (quoting *State v.
Matafeo*, 71 Haw. 183, 187, 787 P.2d 671, 673 (1990)). This is
because in such an instance, the destruction of evidence violates
a criminal defendant's due process rights as set forth in *Brady
v. Maryland*, 373 U.S. 83, 87 (1963). *See Matafeo*, 71 Haw. at
185-86, 787 P.2d 672 (citing *State v. Estrada*, 69 Haw. 204, 208,
738 P.2d 812 (1987)).

Barnes fails to show that the surveillance video would
have been so critical to the defense as to make the trial
fundamentally unfair without it. At the evidentiary hearing, the
District Court determined, and defense counsel confirmed, that
Barnes's argument essentially went to Rivera's credibility and
bias regarding whether the Sports Authority cameras captured the
incident and the District Court stated that Barnes's argument was
too speculative.[5/] In addressing the speculativeness, the
District Court stated that "it's abundantly clear that there is
no video that's going to come into evidence. If there were
video, that *might* be helpful to *either* the State or [Barnes], but
there is none." (Emphasis added.) The District Court thereafter
concluded, "I don't think that the absence of video which
presumably might have corroborated one side or the other makes
trial in this matter fundamentally unfair for [Barnes]."

On appeal, Barnes again argues that the case hinged on
the credibility of witnesses, that the basis for both charges was
Rivera's testimony, and that without the surveillance video,
there was no objective proof of the facts of the incident within
the Sports Authority store and outside of the store. At the

---

[5/]      The District Court also asked, "Can you be more specific?  Do you
have any evidence that [Rivera's] testimony as to where cameras are or what
areas they cover or what areas they don't cover is inaccurate? . . . I'm
talking about affirmative evidence as opposed to skepticism, cynicism, doubt
about [Rivera's] credibility." Defense counsel repeated the same argument
that there were differences of opinion between Rivera and Barnes as to what
areas the Sports Authority cameras captured.

evidentiary hearing, Rivera testified that none of the Sports Authority store cameras recorded areas where Barnes took the watches from and the area in the footwear department where Barnes removed the watches from their casings, and that the only thing he saw on the surveillance video was Barnes exiting the store. As we discuss in more detail below, the trial court judge in a bench trial, as the fact-finder, is free to make all reasonable and rational inferences given the evidence and is tasked with making credibility determinations, which this court is precluded from reevaluating. *See State v. Monteil*, 134 Hawaiʻi 361, 368, 341 P.3d 567, 574 (2014). Accordingly, we decline to address issues relating to the credibility of Rivera's testimony.

Additionally, Barnes does not explain specifically what about the surveillance video would have corroborated his recollection of events, or in the alternative, contradicted or disputed the State's version of events (in the form of Rivera's testimony) so that the video was "so critical . . . as to make [his] criminal trial fundamentally unfair' without it." *Steger*, 114 Hawaiʻi at 170, 158 P.3d at 288. Indeed, the District Court correctly noted at the evidentiary hearing that Yoneda would later testify for the defense at trial as to Barnes's conduct inside and outside the Sports Authority store.

In sum, because Barnes's argument primarily attacks Rivera's credibility, because Yoneda testified for the defense as to the events that transpired both inside and outside of the Sports Authority store, and because Barnes's arguments are based on speculation, Barnes fails to show that the surveillance video was "so critical to the defense as to make a criminal trial fundamentally unfair without it." *See State v. Diaz*, 100 Hawaiʻi 210, 226, 58 P.3d 1257, 1273 (2002) ("[A]bsent a showing that evidence would 'create a reasonable doubt about the defendant's guilt that would not otherwise exist,' no *Brady* violation can be found." (original brackets omitted) (quoting *Matafeo*, 71 Haw. at 186, 787 P.2d at 673)).[6/] Therefore, the District Court did not

---

[6/] *See also Matafeo*, 71 Haw. at 187, 787 P.2d at 673 (holding that evidence was not so crucial to the defense because the State carefully
(continued...)

abuse its discretion in denying Barnes's Motion to Dismiss. *See Akau*, 118 Hawai'i at 51, 185 P.3d at 236.

(3) In his third point of error, Barnes argues that the District Court erred in denying his oral Motion to Suppress Rivera's testimony regarding the watch that Rivera found in Barnes's bag. Barnes argues that the testimony should have been suppressed as the fruit of an illegal, warrantless search because Rivera was acting as an agent of HPD, rather than as a private individual, when he conducted the search of Barnes's bag.

> The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution.

*State v. Spillner*, 116 Hawai'i 351, 357, 173 P.3d 498, 504 (2007) (citing *State v. Wilson*, 92 Hawai'i 45, 48, 987 P.2d 268, 271 (1999)).

The supreme court has emphasized that the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution "ensure that an individual's legitimate expectations of privacy will not be subjected to unreasonable *governmental* intrusions." *State v. Kahoonei*, 83 Hawai'i 124, 129, 925 P.2d 294, 299 (1996) (quoting *State v. Meyer*, 78 Hawai'i 308, 311-12, 893 P.2d 159, 162-63 (1995)). Therefore, evidence obtained by private individuals may be properly admitted. *See id.* at 129, 925 P.2d at 299 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971) (holding that, if private persons act wholly on their own initiative, evidence turned over to police is admissible)). However, if the private individual has an agency relationship with the

_____

[6]/ (...continued)
identified and described the evidence while turning over to the defendant the police report containing details of the evidence, and noting that both testimony and the report supplied no reasonable inference that the condition of the evidence would have favored the defense); *Steger*, 114 Hawai'i at 169-71, 158 P.3d at 287-89 (ruling that lost photographs, which defendant maintained were potentially exculpatory, were not critical to the defense to make defendant's trial fundamentally unfair without them, because the photographs could only have diminished the State's evidence, could not have provided a complete defense, did not preclude defendant from pursuing his defense, and because defendant's argument was too speculative).

police—that is, if "governmental involvement is significant or extensive enough to objectively render an otherwise private individual a mere arm, tool, or instrumentality of the state[,]" *id.* at 130, 925 P.2d at 300—and in that capacity conducts the alleged search and seizure, that is not a "private search" and "the full panoply of constitutional provisions and curative measures appl[y]." *Id.* at 127, 925 P.2d at 297 (citing *State v. Boynton*, 58 Haw. 530, 536, 574 P.2d 1330, 1334 (1978)).

In *Kahoonei*, the supreme court established that, in determining whether a private individual has an agency relationship with the police, the factors enunciated in *Boynton* remain good law—although "the subjective motivation of a private individual is irrelevant," *id.* at 130, 925 P.2d at 300—and that the "totality of the circumstances inquiry" is the correct test. *Id.* The *Boynton* factors look to whether the private individual "(1) was actively recruited; (2) was directed by a government agent; (3) acted for a private purpose; and (4) received any payment for his or her services." *Id.* at 127, 925 P.2d at 297 (citing *Boynton*, 58 Haw. at 537-38, 574 P.2d at 1335).

Barnes does not argue, and the record does not reflect, that Rivera was actively recruited, was directed by a government agent, or received any payment for his services. On appeal, Barnes addresses the remaining *Boynton* factor. However, he failed to make the argument below. During the hearing on the Motion to Suppress, when asked why an agency relationship existed between Rivera and HPD, Barnes gave an unsupported "common sense argument" that Rivera was assisted by HPD, and that any time police officers want to get around unlawful searches and seizures, they simply have a private individual conduct the search and seizure.[1] Even if we consider Barnes's belated

---

[1]     Stated in full, defense counsel responded:

> Well, because [Rivera] was assisted by [HPD]. And in a sense if -- just a common sense argument. Anytime police officers wanted to get around their, um -- get around the constitution and my client's right to unlawful search and seizure, they simply have to hand the bag over to someone else and let them look at it. So that creates an agency agreement or agency relationship when [HPD] allows them to
> (continued...)

*Boynton*-factors argument, the argument is without merit.

Barnes asserts that HPD allowed Rivera to conduct the search of his bag after they had taken the bag into custody, and at that point, Rivera's sole purpose was to gather evidence to support the theft charges against Barnes. Rivera's testimony, which the District Court accepted as true, provides otherwise. Rivera testified that when he conducted the search of Barnes's bag he thought HPD would only proceed with the Harassment charge, and not the Theft 4 charge, and that when he obtained Barnes's bag on top of a shopping cart, he did not know how it got there. More importantly, Rivera's testimony reflects that he was acting in his capacity as an asset protection investigator—which includes "apprehending shoplifters, internal thefts" and recovering stolen items—not as an arm, tool, or instrumentality of the State when he recovered the watch from Barnes's bag.[8]

To the contrary, Barnes asserts that Rivera's sole purpose in conducting the search of Barnes's bag was to gather evidence to support the criminal charges against him, evidenced by Rivera's testimony that he sought to initiate a theft charge against Barnes, and by the fact that Barnes was ultimately charged with both harassment and theft notwithstanding Rivera's claim that HPD told him that they could not proceed with the theft charge. Barnes's first rationale is without merit as Rivera's subjective motivation is irrelevant to the inquiry. *See Kahoonei*, 83 Hawai'i at 130, 925 P.2d at 300 ("[T]he subjective motivation of a private individual is irrelevant[.]"). Barnes's second rationale is also without merit as he fails to explain or provide legal authority as to why the fact that the *State ultimately charged him* with Theft 4 in addition to Harassment necessarily meant that Rivera must have been collecting evidence of Theft 4 as well.

---

[7] (...continued)
look into the bag.

[8] Rivera testified that, based on his training and experience as an asset protection investigator, he never turns recovered items over to the police, and that he put the watch "back into the container and then put it for sale."

Accordingly, Barnes fails to show, by a preponderance of evidence and under the totality of circumstances, that Rivera was acting as an agent for HPD when he searched Barnes's bag and discovered the watch. *See State v. Lawson*, 103 Hawai'i 11, 17-18, 20, 78 P.3d 1159, 1165-66, 1168 (App. 2003) (holding that employee was not a government agent when he called the police after observing defendant lighting the contents of a glass pipe because employee's actions were for the private purpose of complying with employer's no-smoking policy and not doing anything that could harm the store). Therefore, the District Court did not err in denying Barnes's Motion to Suppress Rivera's testimony regarding the watch that Rivera found in his bag.

(4) In his fourth point of error, Barnes argues that there was no substantial evidence to support his conviction for Theft 4 because the State failed to adduce substantial evidence that Rivera was the "authorized representative" of Sports Authority, and that Barnes had concealed and/or taken possession of goods and/or merchandise of Sports Authority. With regard to the latter contention, Barnes argues that there was no objective proof that the watch found in his bag was property of Sports Authority.

"When considering the legal sufficiency of evidence to support a conviction, such evidence adduced in the trial court must be considered in the strongest light for the prosecution." *Monteil*, 134 Hawai'i at 368, 341 P.3d at 574 (quoting *State v. Matavale*, 115 Hawai'i 149, 157, 166 P.3d 322, 330 (2007)).

> On appeal, the test for sufficiency of the evidence is "not whether guilt is established beyond a reasonable doubt, but whether there is 'substantial evidence' to support the conclusion of the trier of fact." "Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."

*Monteil*, 134 Hawai'i at 368, 341 P.3d at 574 (citations omitted). The testimony of a single percipient witness may constitute substantial evidence to support a conviction. *See State v. Eastman*, 81 Hawai'i 131, 141, 913 P.2d 57, 67 (1996) (citing *State v. Ibuos*, 75 Haw. 118, 123, 857 P.2d 576, 578-79 (1993)).

> In a bench trial, "the trial judge is free to make all reasonable and rational inferences under the facts in

evidence, including circumstantial evidence[; which can be used to prove the requisite state of mind.]" Further, "it is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of facts; the judge may accept or reject any witness's testimony in whole or in part." It is not the role of the appellate court to weigh credibility or resolve conflicting evidence.

*Monteil*, 134 Hawai'i at 368, 341 P.3d at 574 (internal citations and original brackets omitted). Put another way, "an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the [trier of fact].'" *State v. Mattiello*, 90 Hawai'i 255, 259, 978 P.2d 693, 697 (1999) (brackets omitted) (quoting *State v. Stocker*, 90 Hawai'i 85, 90, 976 P.2d 399, 404 (1999)).

For Barnes to be convicted of Theft 4, he would have needed to conceal or take possession of goods or merchandise of the Sports Authority store, not in excess of $100, with "intent to defraud." Haw. Rev. Stat. §§ 708-800, 708-830(8)(a), 708-833(1). Here, Rivera's testimony constituted substantial evidence to support the District Court's conclusion that Barnes intentionally took the subject-watch from the Sports Authority store without permission and without paying for it.

Rivera testified that he was employed by Sports Authority as an asset protection investigator when he observed Barnes use pliers to cut two watches out of their plastic casings and conceal one of the two watches in his black bag. Rivera further testified that Barnes did not have permission to remove the subject-watch from the store—which he later recovered from Barnes's bag and which he described as "brand new" and corresponding to the empty casing found in the footwear aisle —and that he did not see Barnes pay for the watch, but instead, walk past the cash registers and through the exit. The District Court found Rivera's testimony to be credible, while it found Barnes's testimony to not be credible, which was the province of the trial court as the trier of fact.

Accordingly, when viewed in the strongest light for the prosecution, substantial evidence in the form of Rivera's testimony existed to support the Theft 4 conviction. *See State v. Zeffilini*, No. CAAP-11-0000306, 2012 WL 676747, at *1 (Haw.

Ct. App. Feb. 29, 2012) (holding that the store manager's testimony was more credible than the defendant's, and that it provided substantial evidence in Theft 4 case); *State v. Newman*, No. CAAP-10-0000203, 2011 WL 5110711, at *1 (Haw. Ct. App. Oct. 25, 2011) (same).

(5) In his fifth point of error, Barnes argues that there was no substantial evidence to support his conviction for Harassment because Rivera's testimony as to the alleged harassment was not credible, and because there was no objective proof that Barnes had spit on him.

Under HRS section 711-1106(1):

> A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:
>
> (a) Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact; [or]
>
> (b) Insults, taunts, or challenges another person in a manner likely to provoke an immediate violent response or that would cause the other person to reasonably believe that the actor intends to cause bodily injury to the recipient or another or damage to the property of the recipient or another[.]

Haw. Rev. Stat. § 711-1106(1)(a)-(b).

Here, the testimony of Rivera constituted substantial evidence to support the District Court's conclusion that Barnes acted with intent to harass or annoy Rivera by touching Rivera in an offensive manner or subjecting Rivera to offensive physical contact. In addressing the lack of Barnes's preserved-spit, the District Court explained, "There might not have been physical evidence of spit on his face. But logically if somebody spit on my face, I'd probably wipe it off rather than preserve it until the cops showed up many minutes later." The District Court thereafter found that there was ample evidence of Harassment based on Rivera's testimony, which it found to be more credible than Barnes's testimony.

According to Rivera, upon approaching Barnes outside the store, Barnes "immediately" got mad, came up close to Rivera's face, put his leg in between Rivera's legs, and while

making a "humping" motion, told Rivera, "You know you want me. You know you want me, Baby[,]" and spit on Rivera. Rivera testified that after Barnes spit on him, he was "[p]issed off" and would "rather get punched then get spit at."

Accordingly, when viewed in the strongest light for the prosecution, substantial evidence existed to support the Harassment conviction.

Therefore, IT IS HEREBY ORDERED that the June 30, 2016 Notices of Entry of Judgment and/or Order entered by the District Court of the First Circuit are affirmed.

DATED: Honolulu, Hawaiʻi, August 2, 2019.


On the briefs:

Thomas Waters
for Defendant-Appellant.

Brandon H. Ito,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge